**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY DANIELS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2803** |
| | : | |
| **MONTGOMERY COUNTY HOUSING** | : | |
| **AUTHORITY, *et al.*,** | : | |
| **Defendants.** | : | |

# MEMORANDUM

**COSTELLO, J.** **SEPTEMBER 1, 2026**

Plaintiff Kimberly Daniels initiated this *pro se* civil rights action on behalf of herself and her brother, Robert Daniels, based on a property dispute against Defendants Montgomery County Housing Authority, Section 8 Housing Manager Lynda Haley, ADA Coordinator Jennifer Saldutti, and her landlord, Umanath Peddi. She subsequently filed an Amended Complaint raising claims under the Fair Housing Act ("FHA"), the Violence Against Women Act ("VAWA"), and related state claims, naming Peddi as the sole defendant and voluntarily dismissing the remaining defendants and claims brought on behalf of her brother.[1] (ECF No. 13.) Daniels also moved to proceed *in forma pauperis*. For the following reasons, the Court will

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013))); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

grant her motion to proceed *in forma pauperis*[2] and dismiss the Amended Complaint.

## I. FACTUAL ALLEGATIONS[3]

Daniels identifies herself as "the head of household" and "a Section 8 voucher participant" for the property she resides at in Montgomery County with her minor children and brother, who is "an affiliated individual under VAWA." (Am. Compl. at 1.) She and her minor son both have disabilities, including autism and ADHD, and her brother has serious medical needs, which require reliable access to basic utilities, such as water. (*Id*. at 2.) She has unspecified emotional support animals at the property and "possesses a valid accommodation letter from a licensed provider." (*Id*.)

Defendant Peddi is her landlord at the property. (*Id*.) Daniels claims Peddi knew of her "familial status, household composition, custody proceedings, disability related needs, and VAWA confidentiality protections." (*Id*.) Despite this knowledge, Peddi allegedly charged her a $3,000 pet fee for her animals, which Daniels claims "are emotional support animals and not pets" and also caused the water service for the property to be terminated several times in April, May and August 2026 because he did not pay the water bill as required under the Section 8 Housing Assistance Payment Contract. (*Id*. at 2-3.) She brings several other complaints against Peddi for not giving her keys to the property, assaulting her son in April 2026, and tampering with her Wi-Fi and security cameras in June 2026. (*Id*.)

---

[2] Three separate motions to proceed *in forma pauperis* are currently pending. (ECF Nos. 7, 8, 12.) The Court will grant the most recent motion (ECF No. 12) filed on the same date as the Amended Complaint and deny the previously filed motions as moot (ECF Nos 7, 8).

[3] Daniels's Amended Complaint ("Am. Compl.") consists of approximately seven pages. (ECF No 13.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Amended Complaint.

On March 17, 2026, Peddi filed an eviction action against her in state court based on the nonpayment of rent and released confidential information protected under VAWA. (*Id*. at 3, 5.) Daniels disputed the rent allegations, but the judge granted an order of possession of the property to Peddi, which she subsequently appealed in the Montgomery County Court of Common Pleas. (*Id*.) She alleges on June 16, 2026, the Court of Common Pleas entered a Judgment of Non Pros against Peddi and in her favor. (*Id*.) On June 17, 2026, Peddi filed a petition to reinstate his case, but he "has not prevailed." (*Id*.)

Peddi allegedly "posted a Notice to Quit and Notice to Terminate Tenancy on [her] door on August 20, 2026, threatening eviction by August 27, 2026, a seven day period." (*Id*.) She claims the notice was based on the nonpayment of rent and lease violations, "including unauthorized occupants, unauthorized pets, property maintenance, use of common areas, smoking, and denial of maintenance access." (*Id*. at 4.) She disputes the amount of unpaid rent Peddi claims is owed and that seven days is insufficient notice for the violations under their lease agreement. (*Id*.) She also takes issue with Peddi posting the notice around 10:20 p.m. given her VAWA protection and within two months of the prior eviction proceedings. (*Id*.) She claims Peddi's behavior since January 2026 demonstrates a "pattern of harassment, retaliation, intimidation, and interference with [her] housing rights and use and enjoyment of the premises." (*Id*.) Daniels brings claims against Peddi for violations of the VAWA, the FHA, and state law. (*Id*. at 4-6.) She seeks monetary relief, declaratory[4] and injunctive relief, and a temporary restraining order against Peddi to cease harassing and retaliating against her. (*Id*. at 6-7.)

[4] Declaratory relief is unavailable to adjudicate past conduct, so Daniels's request for this type of relief is dismissed. *See Corliss v. O' Brien*, 200 F. App' x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App' x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments

## II. STANDARD OF REVIEW

The Court grants Daniels leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether the Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Daniels is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Furthermore, the Court must dismiss the Amended Complaint if it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *see also Grp. Against Smog and Pollution, Inc. v.*

---

are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

*Shenango, Inc*., 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III. DISCUSSION

### A. Claims on Behalf of Others

As an initial matter, Daniels's may not represent her children or her brother in this civil action or bring claims on their behalf to the extend she intended to do so. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). However, *pro se* litigants who are not attorneys, such as Daniels, may not pursue claims on behalf of others. *See, e.g., Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court."); *Gunn v. Credit Suisse Grp. AG*, 610 F. App' x 155, 157 (3d Cir. 2015) (*per curiam*) ("The federal courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity." (internal citation and quotation omitted)); *Osei–Afriyie*, 937 F.2d at

882-83) (holding that a parent could not bring claims on behalf of his child because a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself). Moreover, "a plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Township of Lyndhurst, New Jersey v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted.). The Court will therefore not consider allegations or requests for relief pertaining to anyone other than Daniels. Accordingly, all claims intended to be asserted on behalf of others will be dismissed without prejudice.

**B. VAWA Violations**

Daniels brings claims pursuant to the VAWA, a criminal statute. (*See* Am. Compl. at 5.) The VAWA was originally intended to provide a federal civil cause of action for victims of violent crimes against women, but the key civil remedy provision was struck down. *See United States v. Morrison*, 529 U.S. 598, 627 (2000) (invalidating VAWA's private civil remedy provision as exceeding Commerce Clause authority). Criminal statutes generally do not give rise to a civil cause of action. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"). Numerous courts have held that the VAWA, 18 U.S.C. §§ 2261-2262, does not provide a private right of action. *See, e.g., Humphrey v. Pa. Ct. of Common Pleas of Philadelphia*, 462 F. Supp. 3d 532, 535 n.2 (E.D. Pa. 2020) (collecting cases). However, more recently, Congress adopted the Violence Against Women Reauthorization Act of 2022, which became effective as of October 1, 2022, and provides a federal civil cause of action for individuals whose intimate images are disclosed without their consent. 15 U.S.C. § 6851(b)(1)(A). Daniels alleges that Peddi disclosed her address, not intimate images of her, in violation of the VAWA. Thus, although Daniels describes herself as having "VAWA protected

confidentiality status" (Am. Compl. at 2), it is unclear why she invokes the VAWA in connection with her claims related to disclosing her address.[5] Therefore, these claims must be dismissed.

### C. Fair Housing Act Claims

The FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions. *See* 42 U.S.C. § 3604. The FHA's prohibition of discrimination "can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (quoting *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020). Additionally, "[i]n 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)). Those amendments, the FHAA, make it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

---

[5] Daniels also mentions retaliation in violation of the VAWA, which could be referring to § 12494(a) and provides that:

> No public housing agency or owner or manager of housing assisted under a covered housing program shall discriminate against any person because that person has opposed any act or practice made unlawful by this part, or because that person testified, assisted, or participated in any matter related to this subpart.

34 U.S.C. § 12494(a). Daniels does not allege any facts suggesting a basis for a claim under this provision. Regardless, "there is no private right of action to enforce [the] protections [of the VAWA]. Instead, the statutory scheme mandates [t]he Secretary of Housing and Urban Development and the Attorney General [to] implement and enforce [34 U.S.C. § 12491][.]" *Haywood v. Warner Robins Hous. Auth.*, No. 25-0296, 2026 WL 867389, at *2 (M.D. Ga. Mar. 30, 2026) (internal quotation marks and footnote omitted).

services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Discrimination under the FHAA includes, *inter alia*, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The FHAA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. § 3617.[6] "A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed any right granted or protected by [the FHA]; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Revock*, 853 F.3d at 112-13 (internal quotation marks and footnote omitted). "Interference under § 3617 may consist of harassment, provided that it is 'sufficiently severe or pervasive' as to create a hostile environment." *Id.* at 113 (citations omitted). The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. §

[6] The United States Department of Housing and Urban Development ("HUD") has further defined unlawful conduct under § 3617. *See* 24 C.F.R. § 100.400. These regulations provide that § 3617 prohibits "retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act" and "retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." *See* 24 C.F.R. § 100.400(c)(5)-(6). "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017) (citation omitted). Daniels references retaliation in her FHA claim, (*see* Am. Compl. at 4), but does not allege she engaged in a protected activity, which is fatal to this claim. To the contrary, her claim is better construed as an "interference" claim, as discussed above.

100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)). A claim under § 3617 does not depend upon a substantive violation of the FHA. *Revock*, 853 F.3d at 112

Daniels alleges that Peddi discriminated against her based on her disability and familial status, failed to accommodate her reasonable accommodation request related to her emotional support animals, and interfered with her fair housing rights. (Am. Compl. at 4-5.) Turning first to her reasonable accommodation claim, under the FHAA, "'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)) (alteration in original). "To determine whether an accommodation is 'reasonable,' we consider whether the requested accommodation is '(1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing.'" *Revock*, 853 F.3d at 110 (quoting *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002)). "Whether there has been a 'refusal' to provide a reasonable accommodation under the Fair Housing Act depends on the circumstances." *Id*.

As an initial matter, although Daniels alleges that she "has disabilities, including autism and ADHD" (Am. Compl. at 2), the Amended Complaint does not allege any details about her conditions and, more importantly, how those disabilities substantially limit one or more of her major life activities. She states in conclusory fashion that her disabilities substantially limit major life activities, but identifies no activity, let alone a "major life activity," that she claims to be impaired by her conditions. Therefore, she has not alleged sufficient facts to make plausible a

claim that she is disabled for purposes of coverage under the FHAA. *Harden v. Arbor Mgmt., LLC*, No. 25-881, 2026 WL 2501851, at *3 (D. Del. Aug. 26, 2026) (dismissing FHA claim where plaintiff's allegations did not "provide insufficient detail as to her physical or mental impairments" where she alleged, among other things "that she is a 'qualified individual with a disability,' 'receives disability-related benefits' and received documentation from her therapist verifying her disability").

Even assuming she sufficiently alleged she is disabled, her reasonable accommodation claim against Peddi would still fail because she does not allege her accommodation request is necessary. "'Necessary' suggests something that cannot be done without, and thus is treated as requiring a causal link that examines whether the accommodation sought will redress injuries that otherwise would have prevented disabled individuals from the same enjoyment or access to the property as non-disabled persons." *Schueller v. Pennypack Woods Home Ownership Assoc.*, No. 19-178, 2021 WL 7285246, at *4 (E.D. Pa. Dec. 22, 2021) (internal quotations and citations omitted). In other words, "necessary' means 'required.' It is a high standard[, so the Court] must consider what is necessary to satisfy the particular disabled person's need." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). "Necessities do not include conveniences and creature comforts, much as they are desirable or even helpful. . . . In short, the [FHAA]'s necessity element requires that an accommodation be essential, not just preferable." *Id.* at 106-107. Daniels claims she has three emotional support animals at the property and "possesses a valid accommodation letter from a licensed provider," which she provided to Peddi, and he still allegedly charged her a $3,000 pet fee. (Am. Compl. at 2, 4.) She has not alleged that she ever presented Peddi with a more specific description of her disability or the necessity of her requested accommodation to him. It is also unclear whether the accommodation request was

for permission to have the animals on the property generally, or if the request was to waive the fees associated with having the animals there. *See Fair Hous. Rts. Ctr. in Se. Pennsylvania v. Morgan Properties Mgmt. Co., LLC*, No. 16-4677, 2018 WL 4489653, at *3 (E.D. Pa. Sept. 19, 2018) (observing that the FHA does not require "financial accommodations for disabled tenants"). Without more information, the Court is unable to reasonably infer that the accommodation request was "necessary" for her to use and enjoy the property. Because Daniels has not pleaded any specific facts about the nature of her disabilities, let alone any facts to plausibly allege her request to have the animals, or waive the animal fee, was necessary to accommodate those disabilities, she has failed to state a claim. *See Lloyd v. Manbel Devco I LP.*, No. 23-2261, 2024 WL 811714, at *7 (E.D. Pa. Feb. 27, 2024) (dismissing FHAA reasonable accommodation claim because plaintiff failed to plead a nexus between her disability and the alleged refusal to accommodate).

Daniels next claims Peddi discriminated against her based on her disability and familial status and interfered with her housing rights based on several events since January 2026. For instance, she claims Peddi did not give her keys to the property, failed to pay her water bill, tampered with her Wi-Fi and security cameras in June 2026, and filed an eviction action against her in state court based on the nonpayment of rent, which ultimately concluded in her favor. (Am. Compl. at 2-3.) She also alleges that Peddi "posted a Notice to Quit and Notice to Terminate Tenancy on [her] door on August 20, 2026, threatening eviction by August 27, 2026, a seven day period." (*Id*. at 3.) She claims the notice alleges nonpayment of rent and lease violations, "including unauthorized occupants, unauthorized pets, property maintenance, use of common areas, smoking, and denial of maintenance access." (*Id*. at 4.) She disputes the amount of unpaid rent Peddi claims is owed and also takes issue with Peddi posting this notice late in the

evening and within two months of the prior eviction proceeding. (*Id.*) She claims Peddi's behavior demonstrates a "pattern of harassment, retaliation, intimidation, and interference with [her] housing rights and use and enjoyment of the premises." (*Id.*) She also asserts these actions were a result of Peddi's discrimination against her on the basis of her disability and familial status. (*Id.* at 4-5.)

Daniels has not stated a plausible FHA claim, either under a theory of discrimination or a theory of interference. She makes the conclusory allegation that she was discriminated against based on her disability[7] and familial status, but she states no facts to support an inference that Peddi had discriminatory intent, *i.e.*, that he discriminated against her *because of* her protected status, or that she was treated differently than others outside of her protected classes.[8] Instead her allegations appear to largely stem from a dispute over their lease agreement terms, such as payment of rent and other lease violations, "including unauthorized occupants, unauthorized pets, property maintenance, use of common areas, smoking, and denial of maintenance access." (Am. Compl. at 4.)

The Fair Housing Act does not "create some general federal cause of action governing landlord-tenant disputes." *Rosado v. Whitcraft,* No. 23-3717, 2023 WL 8720137, at *8 (E.D. Pa. Dec. 15, 2023) (quotation omitted). Instead, a plaintiff must plead some facts that plausibly link

[7] As already noted, she has not alleged sufficient facts to make plausible a claim that she is disabled for purposes of coverage under the FHAA. Putting that fatal flaw aside, her claims based on disability discrimination would still fail for the reasons explained herein.

[8] Although it does not appear Daniels intended to bring a claim for discrimination based on her income or source thereof, the Court notes even if she did, it would not be plausible. *See Dew v. S. Columbia Terrace, LLC*, 854 F. App'x 460, 462 (3d Cir. 2021) (*per curiam*) (affirming dismissal of FHA claim because source of income is not protected by the FHA); *see also Dejesus*, *v. Vicky*, No. 21-1403, 2021 WL 1546228, at *5 (E.D. Pa. Apr. 20, 2021) (allegations of discrimination based solely on status as a Section 8 voucher holder, and not based on membership in a statutorily protected class, fail).

dissatisfaction with landlord-tenant proceedings to discrimination on the basis of race, color, religion, sex, familial status, or national origin. *Id.* Daniels does not tie her allegations to her membership in a protected class, much less adequately allege sufficient facts from which one could infer that Peddi intentionally discriminated against her, *i.e*., that some discriminatory purpose was a motivating factor behind the challenged actions, or that any of Peddi's actions or practices disproportionately burdened a protected class of which she is a member, so as to cause a disparate impact. *See White,* 767 F. App'x at 334-35 (affirming dismissal of FHA claim and explaining that "it is not enough for White to merely allege a constitutional violation and state that Appellees discriminated against him; rather, White needed to elaborate and point to any context plausibly suggesting race discrimination. . . ."); *Fessler v. Sauer*, 455 F. App'x 220, 224 (3d Cir. 2011) (*per curiam*) (affirming dismissal of FHA claims predicated on "bare allegation" of discrimination); *White v. Edmonds*, No. 26-2613, 2026 WL 1180473, at *5 (E.D. Pa. Apr. 30, 2026) (dismissing FHA discrimination claim because White does not "allege facts allowing us to plausibly infer how the building and each Manager discriminated against her because of her disability"); *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016) (explaining that plaintiff's allegations based on "a series of housing maintenance concerns" did not state a FHA claim because the FHA "does not[] . . . create some general federal cause of action governing landlord-tenant disputes."), *report and recommendation adopted*, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016).

Similar to the reasons explained above, Daniels's claim under § 3617 fares no better because there are no allegations that Peddi interfered with the exercise of her rights *because of*

her disability and familial status.[9] Rather, her allegations discuss disputes with Peddi related to issues about rent payments and lease violations, but she does not link these disagreements to any right protected under the FHA. These reasons do not constitute interference with her rights because of her membership in a protected class, so she has not stated a claim. *See, e.g., Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA

---

[9] Although the VAWA statute does not create a private right of action as explained, Daniels claims Peddi interfered with her "VAWA related rights." (Am. Compl. at 5.) It is possible she intended to bring an FHA claim based on the theory of interference because of her sex. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). "Although the Third Circuit has not weighed in on this issue, most district courts that have addressed it have found that domestic violence victims are members of a protected class and may bring a claim for housing discrimination under the FHA through a theory of sex discrimination." *Butler v. Sundo Capital, LLC*, 559 F. Supp. 3d 452, 457 (W.D. Pa. Sept. 9, 2021) (citing cases). However, such a claim would still fail because she has not stated allegations Peddi discriminated against her *because of* her sex, or that she was treated differently than others outside of her protected classes. The Court also notes her allegations that she has VAWA protections do not sufficiently allege she is a domestic violence victim or that she believes she was discriminated against because of her sex. Because she will have an opportunity to file a second amended complaint, she should also be aware of how to plead such a claim if she chooses to move forward:

> …[A] sex discrimination claim based upon claimant's status as a domestic violence victim may lie only if a plaintiff can demonstrate: (1) the defendant has adopted a policy regarding victims of domestic violence that has had a disparate impact upon women or (2) the defendant has intentionally discriminated against the plaintiff/domestic-violence-victim *because* she is a woman. In the context of a disparate impact claim, status as a domestic violence victim may be an adequate proxy for sex because a policy unfairly targeting domestic violence victims will largely affect women. But, when considering a disparate treatment claim, status as a domestic violence victim is not a sufficient proxy for sex for the simple reason that not all domestic violence victims are women; plaintiff must still demonstrate that she was intentionally discriminated against based upon her *sex*. *Bostock [v. Clayton County]*, 590 U.S. 644, 657-658 (2020)]. As the Eighth Circuit has observed, though in the context of an equal protection claim, 'discrimination against victims of domestic violence is not *ipso facto* sex discrimination.' *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005).

*McVicker v. Muskogee Hous. Auth.*, No. 22-108, 2024 WL 4416555, at *8 (E.D. Okla. Oct. 4, 2024) (dismissing sex-based FHA claims because plaintiff only alleges discrimination based on being a victim of domestic violence and must further demonstrate that defendant's actions were taken against her *because* she is a woman).

interference and retaliation claims on screening where plaintiff did not link alleged harassment to her exercise or enjoyment of a right under the FHA" and does not allege a protected activity involving complaints about discrimination); *Jones v. 1260 Hous. Dev. Corp.*, No. 18-1420, 2018 WL 1757605, at *3 (E.D. Pa. Apr. 11, 2018) (dismissing FHA claim as conclusory because "while Mr. Jones mentions that he is African-American, nothing in the Complaint suggests that the 1206 Housing Development Corporation evicted him based upon his race"). Although the Amended Complaint baldly describes Peddi's conduct as discriminatory and interfering with her housing rights based on said discrimination, no facts support those conclusory allegations. "A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021); *see also Iqbal*, 556 U.S. at 680 (stating that a complaint must include sufficient facts to nudge claims "across the line from conceivable to plausible" (citing *Twombly*, 550 U.S. at 545)). Therefore, the FHA claims will be dismissed.

**D. State Law Claims**

Because her federal claims will be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over her remaining claims brought under state law. *See Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) ("A court may [decline to exercise supplemental jurisdiction] under 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it has original jurisdiction.").

Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all

plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co.,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). As stated, the plaintiff has the burden of pleading the existence of the court's jurisdiction, *see* Fed. R. Civ. P. 8, and '"in a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed,'" *Craven v. Leach*, 647 F. App'x 72, 75 (3d Cir. 2016) (*per curiam*) (quoting *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 177 F.3d 210, 222 n. 13 (3d Cir. 1999)).

An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Residence alone is insufficient to establish domicile. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("The fact of residency must be coupled with a finding of intent to remain indefinitely."). Rather, "domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Hovensa LLC*, 652 F.3d at 344.

Daniels does not allege the citizenship of the parties. Rather, she provides only that she currently resides in Montgomery County, Pennsylvania. Accordingly, she has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims she intends to pursue, and these claims will be dismissed for lack of subject matter jurisdiction. *See Williams v. Francois*, No. 22-3339, 2023 WL 2203570, at *2 (3d Cir. Feb. 24, 2023) (*per curiam*) (affirming *sua sponte* dismissal of state law claims for lack of

subject matter jurisdiction where plaintiff failed to adequately allege the citizenship of any party to the action).

## IV. CONCLUSION

For the reasons stated, the Court will grant Daniels leave to proceed *in forma pauperis* and dismiss her Amended Complaint without prejudice.[10] Daniels will be given leave to file a second amended complaint in the event she can cure the defects the Court has identified in her claims, with the exception of any claims brought on behalf of others. Because the Amended Complaint will be dismissed, her request for injunctive relief will be denied.[11] Her request for a temporary restraining order will also be denied since she cannot demonstrate success on the merits of her claims. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest.").

An Order follows, which provides further guidance as to amendment.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**

[10] Daniels also prematurely filed a summons. (ECF No. 14.) Because this case did not pass statutory screening and will not proceed to the service stage, her summons will be stricken from the record as unauthorized.

[11] "'[A] request for injunctive relief by itself does not state a cause of action. . . . An injunction is a remedy, not a separate claim or cause of action. A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate.'" *Slemmer v. McGlaughlin Spray Foam Insulation,* Inc., 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013) (quoting *Jensen v. Quality Loan Serv. Corp.*, 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010)).